UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL E. SARVER,

        Plaintiff                        Civil Action No. 07-11597

v.                                  HON.  SEAN F. COX
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Paul E. Sarver, brings this action under 42 U.S.C. §405(g) challenging a final

decision of Defendant Commissioner denying his application for Disability Insurance

Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment

motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B).   I recommend that Defendant's Motion for Summary Judgment be

GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 29, 2000, alleging  disability as of

July 15, 1998 (Tr. 60-62).  After the denial of his claim, Plaintiff filed a timely request for

an administrative hearing, conducted on January 31, 2002 in San Diego, California before

Administrative Law Judge ("ALJ") Bernard A. Trembly (Tr. 439-458). Plaintiff, represented by attorney Dan Keenan, testified. (Tr. 443-458). Gloria Lasoff, Vocational Expert ("VE") also testified (Tr. 457-458). In a decision dated March 21, 2002, ALJ Trembly determined that although Plaintiff was unable to perform his past relevant work as an electrician, he retain the ability to perform an unlimited range of unskilled, exertionally light work (Tr. 322). On March 24, 2003, the Appeals Council remanded the case, finding that the ALJ had performed inadequate treating physician and credibility analyses (Tr. 338, 339-341).

On July 6, 2004, ALJ Michael F. Wilenkin conducted a rehearing of Plaintiff's claim in Oak Park, Michigan (Tr. 459-487). Plaintiff, represented by attorney Carli Suffi, testified, as did VE Elizabeth Pasinoski (Tr. 462-479, 479-479-487). On October 18, 2004, ALJ Wilenkin determined that Plaintiff retained the capacity for sedentary work with a sit/stand option (Tr. 22-23). On February 9, 2007, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on April 9, 2007.

## BACKGROUND FACTS

Plaintiff, born June 6, 1957, was age 47 when ALJ Wilenkin issued his decision (Tr. 60). He completed high school and worked as a marine electrician (Tr. 69,74). Plaintiff alleges disability as of July 15, 1998 as a result of body aches and swelling (Tr. 68).

### A. Plaintiff's Testimony

### 1. January 31, 2002 Hearing

Plaintiff reported that he had not worked since 1997, adding that his health problems had been exacerbated by a heart attack in 2000 (Tr. 444). Plaintiff testified that he continued to experience symptoms of arrhythmia, adding that asthma required him to take nebulizer treatments (Tr. 444-445). He indicated that he currently took Betapace, Prinivil, Lipitor, and Ultram (Tr. 447). He also alleged lower leg and foot numbness (Tr. 445-446).

Plaintiff indicated that he was unable to stand or sit for extended periods due to back and leg cramps (Tr. 446). Plaintiff, divorced, stated that he currently lived with his mother, reporting that he continued to drive "for short periods of time," but alleged that leg weakness obliged him to lean on a shopping cart while grocery shopping (Tr. 448). He testified that he did not use a walker (Tr. 448). He estimated that on a scale of one to ten, he regularly experienced level seven pain by the end of most days (Tr. 448).

Plaintiff stated that on a typical day, he would drive to his former wife's residence in the morning to help his step-daughter prepare for school, then "piddle around" for the rest of the day, performing light household tasks (Tr. 448-449). He opined that he was unable to perform his former work as a marine electrician due to his present inability to climb ladders or pull cables (Tr. 449). He reported that he stopped working due to fatigue, muscle weakness, and shortness of breath (Tr. 451-452).

Plaintiff estimated that he was unable to stand for more than an hour due to ankle and leg swelling (Tr.454). Plaintiff, 6' 3" and 195 pounds, reported that he had experienced an unexplained weight loss of 140 pounds since his 2000 heart surgery (Tr. 454-455). He stated

that condition he rendered him unable to perform any meaningful lifting (Tr. 457). He also testified that he currently experienced migraine headaches (Tr. 458).

### 2. July 6, 2004 Hearing

Plaintiff testified that he currently lived with his wife and three stepdaughters in Frasier, Michigan (Tr. 462). He indicated that before the disability onset, he worked as an electrician journeyman, performing repairs on military ships, adding that his work required him to lift anywhere between 10 and 150 pounds (Tr. 463-463). Plaintiff alleged that heart, lung, lower back, feet, and ankle problems had prevented him from working since 1998 (Tr. 465). He reported managing recurrences of tachycardia by avoiding strenuous activities (Tr. 465). He reported further that even climbing or descending stairs created shortness of breath and headaches (Tr. 466).

Plaintiff, acknowledging that he continued to smoke, reported pulmonary conditions in addition to heart problems, testifying that he currently took four 15-minute nebulizer treatments each day (Tr. 467-468, 477). He indicated that even limited sitting or lifting more than ten pounds created back pain (Tr. 468, 475). Plaintiff alleged that he was unable to sit or stand for more than 30 minutes continuously, or walk for more than one block, but denied treatment for either back or leg pain except for Tylenol (Tr. 470, 474). He stated that he could stoop, squat, or crouch with difficulty, but denied difficulty using his arms or hands (Tr. 474). He testified that in addition to heart, pulmonary, back, and leg problems, he experienced frequent ankle swelling, adding that blood pressure medication did not improve his ankle condition and that he experienced relief only by reclining (Tr. 471). Plaintiff

-4-

testified that he continued to perform light household and yard chores, but that his pulmonary condition obliged him to nap four times each day (Tr. 473, 475). He also reported migraine headaches as a result of stress (Tr. 476). Plaintiff denied alcohol use as of 2000 (Tr. 479).

## B.  Medical Evidence

### 1. Treating Sources

In April, 1995, Plaintiff sought treatment for a sebaceous cyst on his left eyelid which was removed without complications (Tr. 132-133). In January, 1997, Plaintiff complained of foot pain (Tr. 131). In July, 1998, Plaintiff sought treatment for swollen ankles (Tr. 166). Treatment notes by Martin M. Nosan, M.D. state that Plaintiff currently drank "a six to twelve pack a day," and smoked three to four packs of cigarettes (Tr. 166). Notes from an exam later the same month indicate that Plaintiff experienced "[p]robable alcoholic hepatitis /decompensation" (Tr. 165). Plaintiff reported that he had recently been laid off (Tr. 165). In December, 1998 Plaintiff told Dr. Nosan that he had discontinued using inhalers (Tr. 161). Dr. Nosan noted in April, 1999 that Plaintiff did not wheeze (Tr. 159). In June, 1999, Plaintiff, now 334 pounds, reported weight gain and leg swelling (Tr. 155). The same month, Dr. Nosan opined that he was "uncertain" as to whether Plaintiff could perform his regular work, noting that he was unable to walk even two blocks due to Chronic Obstructive Pulmonary Disease (COPD) and cellulitis (Tr. 154). In August, 1999, Plaintiff experienced expiratory wheezing (Tr. 151). Dr. Nosan advised Plaintiff to "[c]ontinue to try weight loss" (Tr. 151). A September, 1999 "Visual Acuity Test" found that Plaintiff did not own any prescription glasses, but could "visually move about the office without any help" (Tr. 140).

In May, 2000, Plaintiff sought emergency treatment after experiencing acute respiratory distress, "secondary to congestive heart failure" (Tr. 212). Imaging studies from the same month show "mild congestive heart failure" (Tr. 200). During the course of Plaintiff's ensuing hospitalization, Vavindra Prabhu, M.D. recommended "an AV nodal suppressant drug" as well as "ablation of the bypass tract" (Tr. 191). Plaintiff's discharge records indicate that his respiratory distress had been resolved (Tr. 168).

October, 2000 treating notes by Dr. Prabhu indicate that Plaintiff took Betapace, Prinivil, and Lipitor for his heart condition as well as inhaler treatments (Tr. 228). Treating notes from the same month by Dr. Cardones, M.D., show that Plaintiff, now 260 pounds, continued to lose weight and in January, 2001 weighed 237 pounds (Tr. 249).

In March, 2001, a "Multiple Impairments Questionnaire" administered by Dr. Cardones stated that Plaintiff experienced asthma, COPD, hypertension, anemia, and cardiac arrhythmia with a "fair" prognosis (Tr. 263). Dr. Cardones opined that in the course of an eight-hour workday, Plaintiff was limited to four hours of sitting and one hour standing or walking, adding that Plaintiff should be allowed to "get up and move around[] . . . . as needed" (Tr. 265). Dr. Cardones found further that Plaintiff should be restricted to lifting or carrying five pounds on an occasional basis and minimal grasping, turning, twisting (Tr. 266). The assessment likewise limited Plaintiff to minimal manipulative tasks and reaching, and stated that Plaintiff symptoms would "likely increase if he . . . were placed in a competitive work environment" (Tr. 267). Dr. Cardones determined that Plaintiff's

symptoms would create periodic "symptoms severe enough to interfere with attention and concentration," but found that Plaintiff was capable of "low stress" work (Tr. 268). Opining that Plaintiff's impairments would interfere with work two to three times a month, Dr. Cardones advised that Plaintiff would need to avoid fumes, gases, temperature extremes, dust, pushing, and pulling (Tr. 269).

In June, 2001, Plaintiff complained of intermittent headaches, reporting however, that he had cut back to one pack of cigarettes at day (Tr. 294). In January, 2002, Dr. Prabhu composed a narrative report on Plaintiff's condition, noting that he had treated Plaintiff since May 15, 2001[1] (Tr. 297). Dr. Prabhu stated that Plaintiff "continues to be affected by disabling symptoms including shortness of breath, palpitations, fatigue, [and] headache[s]" (Tr. 297). He opined that he did "not expect any substantial recovery or improvement" in Plaintiff's condition over the next few months (Tr. 297). April, 2002 treating notes show that Plaintiff continued to smoke (Tr. 369). Dr. Prabhu completed a "Cardiac Impairment Questionnaire," in July, 2002, deeming Plaintiff's prognosis "fair" as a result of COPD[2] (Tr. 356). He found that Plaintiff retained the ability to sit, stand, or walk for two hours in an eight-hour workday with an ability to lift or carry up to 20 pounds on an occasional basis (Tr. 359). Dr. Prabhu deemed Plaintiff capable of low stress work limited by the need to avoid fumes, gases, humidity, and dust; as well as vision problems and preclusions on kneeling and

---

[1]Actually, Dr. Prabhu's treating notes indicate that he first treated Plaintiff in May, *2000* (Tr. 191).

[2]A January, 2002 assessment by Dr. Prabhu found similar results (Tr. 361-365).

stooping (Tr. 359-360). The same month, Dr. Prabhu, noting that Plaintiff had lost "in excess of 200 pounds" since his May, 2000 heart attack, stated that "following . . . discharge the pre-excitation pattern has no longer been seen," but that Plaintiff "continues to feel that there are periods of palpitations" (Tr. 377).

In January, 2004, Michael Raad, D.O. completed a "Multiple Impairments Questionnaire," opining that due to "moderate" COPD, hypertension, and coronary artery disease, Plaintiff would be limited to sitting for four hours and standing or walking for two hours in an eight-hour workday (Tr. 401). Dr. Raad found that Plaintiff should be restricted to lifting or carrying five pounds on an occasional basis (Tr. 402). He stated that due to shortness of breath, Plaintiff also experienced "significant limitations" in reaching handling, fingering and lifting (Tr. 402). Determining that Plaintiff experienced the environmental limitations similar to those found by Dr. Prabhu, above, Dr. Raad concluded that Plaintiff was capable of low stress work (Tr. 404-405). In May, 2004, Dr. Raad, noting that Plaintiff's baseline ejection fraction was reduced at 48%, opined that Plaintiff was unable to perform either full or part time employment (Tr. 407).

In August, 2004, Psychologist Milton. J. Grosenbach opined that Plaintiff experienced "moderate" anxiety and "severe" depression precluding all gainful employment (Tr. 414).

### 2. Consultive and Non-Examining Sources

In September, 1999, Plaintiff underwent a consultive examination performed on behalf of the SSA (Tr. 134-138). Shahin Keramati, M.D., finding a history of obstructive

lung disease and obesity, noted that Plaintiff continued to smoke despite shortness of breath, wheezing, and an alleged inability to walk more than one block (Tr. 134). Plaintiff denied headaches, blurred vision, or sinus problems (Tr. 135). Dr. Keramati found the absence of muscle spasms of the back and "5/5 strength in all extremities (Tr. 137). Plaintiff exhibited "a normal station and gait," along with normal reflexes (Tr. 137). Dr. Keramati concluded that Plaintiff could "lift and carry twenty pounds occasionally and ten pounds frequently," with the ability to stand and walk for six hours in an eight hour day and "bend and crouch occasionally" (Tr. 138).

Also in September, 1999, a Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently; the ability to stand, walk, or sit up to six hours in an eight-hour workday; and an unlimited ability to push or pull (Tr. 142). The report found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and the absence of manipulative, visual, communicative, or environmental impairments, concluding that Plaintiff was only partially credible (Tr. 144-145, 148). October, 2000 notes concerning a consultation request noted that Plaintiff was still smoking one and a half pack of cigarettes each day and was "not interested in stopping" (Tr. 231).

In the December following Plaintiff's May, 2000 myocardial infarction, a second Residual Functional Capacity was performed (Tr. 218-225). Plaintiff was again deemed capable of lifting 20 pounds occasionally and 10 pounds frequently with an ability to stand,

walk, or sit up to six hours in an eight-hour workday (Tr. 219).  However, the report found that Plaintiff retained only a limited ability to push and pull in both the upper and lower extremities (Tr. 219).  The report found further that Plaintiff was precluded from all ladder, rope, and scaffold climbing, with the ability to climb ramps or stairs; and balance, stoop, kneel, crouch, or crawl on an occasional basis only (Tr. 220).  The assessment again found the absence of manipulative, visual, and communicative limitations, but concluded that Plaintiff should avoid even moderate exposure to extreme cold and heat, wetness, humidity, fumes, odors dusts, gases, poor ventilation, as well as working at heights (Tr. 222).

### 3.   Material Submitted Subsequent to the October 18, 2004 Administrative Determination

In January, 2005, Dr. Grosenbach, noting that he had treated Plaintiff since July, 2004, completed a "Multiple Impairment Questionnaire," opining that in addition to Plaintiff's physical limitations, depression and anxiety rendered him incapable of performing even low stress jobs (Tr. 421).   A February, 2005 "Psychiatric/Psychological Impairment Questionnaire" by Dr. Grosenback assigned Plaintiff a GAF of 55, deeming his prognosis "guarded"[3] (Tr. 424).   Dr. Grosenbach found the presence of marked cognitive, concentrational, social, and adaptive deficiencies, again concluding that Plaintiff was incapable of even low stress work (Tr. 427-430).  Dr. Grosenback found that the "symptoms

---

[3]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school function.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders –Text Revision* at 34 (*DSM-IV-TR*), 30 (4th ed.2000).

and limitations" listed in the questionnaire were applicable to Plaintiff in 1998 and forward (Tr. 431).

### C.     Vocational Expert Testimony

### 1. January 31, 2002 Hearing [4]

VE Gloria Lasoff classified Plaintiff's past relevant work as an electrician as skilled at the medium exertional level[5]  (Tr. 457).

### 2. July 6, 2004 Hearing

VE Elizabeth Paikowski classified Plaintiff's past relevant work as a electrician and marine repairman as skilled at the heavy level of exertion, finding further that he retained skills transferable to either exertionally medium or light work (Tr. 480).   The VE found that if Plaintiff's allegations of limitations were fully credited, he would be unable to perform his past relevant work or any full time employment (Tr. 480).

---

[4]Although ALJ Trembly found that Plaintiff was unable to perform his past relevant work, he did not elicit job findings from the VE.

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."

The ALJ then listed a set of hypothetical impairments requiring standing or walking for two hours in an eight-hour workday; sitting for six hours; and the occasional lifting of up to ten pounds[6] (Tr. 481). The hypothetical limitations also included "recurrent episodes of tachycardia . . . . for purposes of this query do not happen of sufficient severity, intensity, or frequency to interfere with or otherwise preclude [sedentary work]" (Tr. 481). The ALJ added a preclusion of "moderate to significant concentration of atmospheric irritants at the work site," along with "a need to avoid abrupt or rapid changes in temperature [and] humidity," and prolonged walking, climbing stairs, or ladders (Tr. 482). Finally, noting that the hypothetical individual would not possess "cognitive" limitations, the ALJ nonetheless included a preclusion on "work wherein its pace and level of productivity is dictated by an external source over which he has no control such as an assembly line of a conveyor belt" (Tr. 483).

The VE found that given the above limitations, such an individual could perform semi-skilled, exertionally light electrical bench assembly work (3,200 jobs regionally); unskilled, light work as a bench assembler (4,000), inspector (3,600), sorter/packer (2,600), and host/hostess (4,000) (Tr. 484). The VE found further that the same individual could perform the sedentary jobs of bench assembler (2,800), inspector (2,000), and sorter/packer

---

[6]

The undersigned customarily includes an ALJ's hypothetical questions *verbatim*. However, because the present question, interspersed with discourse on Plaintiff's medical conditions in addition to the workplace limitations relevant to the VE's findings, is three pages in length, it has been summarized for the convenience of the district court (Tr. 481-483).

(2,600), adding that all of her job findings included a sit/stand option (Tr. 484).  The VE concluded her testimony by stating that her findings were consistent with the Dictionary of Occupational Titles ("DOT") (Tr. 487).

## D.    The Administrative Decisions

### 1.  March 21, 2002

Citing Plaintiff's medical records, ALJ Trembly found the presence of the severe impairments of cardiac arrhythmia, asthma, and headaches, but that none of the conditions met or equaled any impairment found in Appendix 1, Subpart P, Regulations No. 4 (Tr. 321). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift 10 pounds frequently or 20 pounds occasionally along with the ability to stand or walk for more than two hours in an eight-hour workday (Tr. 321).  He found that Plaintiff's non-exertional limitations were limited to the avoidance of respiratory irritants such as dust, gases, fumes, and "other noxious odors" (Tr. 321).  He concluded that Plaintiff was capable of a full range of light to sedentary work subject to the above non-exertional limitations (Tr. 321).  Noting that Plaintiff's treating sources found the presence of disability, ALJ Trembly nonetheless found a lack of "current objective, clinical findings" to substantiate  the physicians' opinions (Tr. 319).

### 2.  October 18, 2004

Citing Plaintiff's medical records, ALJ Wilenkin found that Plaintiff experienced the severe impairments of severe cardiac arrhythmia controlled with medication, well controlled

hypertension, chronic obstructive pulmonary disease, complaints of headaches, and complaints of low back pain, finding nonetheless that Plaintiff's impairments did not meet or equal in severity, any impairment found in Appendix 1, Subpart P, Regulations No. 4 (Tr. 17, 22). Adopting the VE's job findings, he found that Plaintiff retained the Residual Functional Capacity to perform of limited range of unskilled sedentary work offering a sit/stand option (Tr. 22-23).

The ALJ deemed Plaintiff's allegations of limitation "not wholly credible," noting that Plaintiff continued to perform light household chores, cook, and shop without assistance (Tr. 20). He also rejected Dr. Grosenbach's opinion that Plaintiff was disabled as a result of anxiety, depression, COPD, and coronary artery disease, finding it "completely unsupported by the medical evidence" (Tr. 20).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff submits multiple arguments for remand. First, Plaintiff contends that the ALJ's omission of his mental health conditions at Step Two of the administrative analysis taints the ultimate non-disability determination. *Docket #8* at 13-15. Next, he argues that the ALJ committed reversible error by partially discounting his treating physicians' opinions. *Id.* at 15-19. Finally, Plaintiff contends that the ALJ's finding that his claims lacked credibility reflects an erroneous reading of the record. *Id.* at 19-20.

### A. Step Two Determination

20 CFR § 416.921(a) defines a non-severe impairment which does not require inclusion at Step two as one that does not "significantly limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* The court in *Farris v. Secretary of HHS,* 773 F.2d 85, 89 (6th Cir. 1985) found that "the second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education

and work experience.'" *Farris,* 773 F.2d at 90; *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984).

I disagree with Plaintiff's argument that the lack of reference to his alleged mental limitations at Step Two constitutes reversible error. First, the omission of an explicit finding of Step Two impairments where substantial evidence supports the presence of a work-related limitation does not in and of itself require remand.[7] *See Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004). *See also Moran v. Commissioner of Social Security* 2003 WL 22002432, 2 (E.D.Mich.,2003); *Leeper v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990). Assuming for the moment the validity of Dr. Grosenbach's finding that Plaintiff experienced pacing and concentrational deficiencies, the ALJ's error, if any, was harmless due to the fact that these limitations were accounted for in the formulation of the hypothetical question (Tr. 483). Further, the VE's finding that Plaintiff could perform the work of an assembler, inspector, and sorter/packager, later adopted in the administrative opinion, adequately reflects Plaintiff's more recent allegations of mental deficiencies, reflecting the hypothetical question's preclusion on assembly line or other quota-driven work (Tr. 483). *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). *See also Pompa v. Commissioner of Social Sec.,* 73 Fed.Appx. 801, 803 (6th Cir. 2003)(unpublished)(finding that

---

[7] Admittedly, in some instances an improper Step Two omission serves to invalidate the entire decision *(See Nowlen v.Commissioner of Social Sec.* 277 F.Supp.2d 718, 725-726 (E.D.Mich.,2003) (failure to include depression at Step Two, despite a diagnosis by *multiple* treating physicians, coupled with a lack of reference to mental health limitations in the hypothetical question or RFC required remand.)

a Step Two omission is of little consequence, reasoning that "once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.").

Next, and more fundamentally, the ALJ permissibly rejected Dr. Grosenback's August, 2004 opinion by noting that the finding that Plaintiff experienced mental disorders stood unsupported by other evidence:

> "There is no record that the claimant has ever complained of significant depression and/or anxiety. There is no record that the claimant has ever undergone any treatment for any mental impairment with the exception of attending AA meetings for alcoholism. The file contains no evidence that the claimant has been prescribed antidepressants or other psychotropic medication or has been evaluated, diagnosed, and treated for any complaints of depression and anxiety."

(Tr. 20).

In addition, although Plaintiff apparently places reliance on Dr. Grosenbach's January and February, 2005 assessments to establish disability, this material was submitted subsequent to the October, 2004 administrative opinion, and is therefore subject to only narrow review by this Court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which*

*is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added).   Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Aside from the general observation that the "mental impairment" argument appears to have formulated sometime after the July 6, 2004 hearing, because Plaintiff has failed to show good cause for failing to submit Dr. Grosenbach's questionnaire answers before January, 2005, a Sentence Six remand is inappropriate.[8]

## B.  Treating Physicians

*Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7) (6th Cir. 1991) states that "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight.  If uncontradicted, the physicians' opinions are entitled to complete deference." In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544  (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

---

[8]

In particular, the Court also notes although Dr. Grosenbach did not treat Plaintiff until July 22, 2004, in February, 2005, the psychologist concluded, absent any objective support, that Plaintiff had been disabled from all work since 1998 (Tr. 424, 431).

Moreover, regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, *Wilson* ( *citing* 20 C.F.R. § 404.1527(d)(2)) holds that the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544; *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999).

Plaintiff alleges that the ALJ's analysis was incomplete because he conducted an in-depth analysis of only one of the four treating physicians submitting questionnaires. He contends that the ALJ omitted meaningful discussion of Drs. Nosan, Cardones, and Raad's conclusions, bothering only to discuss his reasons for rejecting Dr. Prabhu's opinion.

First, I disagree that the treating physicians analysis was inadequate. The ALJ devoted over an entire transcript page to discussing Dr. Prabhu's findings and the reasons that a portion of these limitations were rejected (Tr. 18-20). Pursuant to *Wilson, supra*, the ALJ noted that Dr. Prabhu's opinion stood at odds with November, 2000 x-rays showing the absence of pulmonary disease (Tr. 19). The ALJ also noted that in July, 2002, Dr. Prabhu found that Plaintiff's vital signs and weight were all within normal limits (Tr. 20). The ALJ also cited January, 2004 imaging studies of Plaintiff's lungs showing with the exception of "a small focus of emphysema . . . clear and unremarkable" results (Tr. 20).

Next, in light of the fact that the four physicians concurred in large part on Plaintiff's degree of limitation, the ALJ was not required to re-discuss his reasons for rejecting the same alleged impairments. Although the administrative decision contained a much shorter discussion of Dr. Raad's opinion, the ALJ also supported his determination by citing Dr. Raad's treating notes showing that his "disability" opinion stood at odds with his own treating records indicating Plaintiff's condition was well-controlled with medication (Tr. 20).

Further, although Plaintiff argues that the ALJ erred in omitting discussion of Dr. Cardones opinion, the ALJ permissibly cited this physician's opinion to support the conclusion that Plaintiff could perform at least sedentary work (Tr. 18 *citing* 266). Likewise, although Plaintiff faults the ALJ for failing to discuss Dr. Nolan's findings, Dr. Nolan did not state that Plaintiff was disabled but instead opined in June, 1999 that he was "uncertain" as to whether Plaintiff could return to work (Tr. 154). Because Drs. Prabhu and Raad, unlike the other two physicians, appear to have stated more explicitly that Plaintiff was disabled from all work, the ALJ reasonably took extra pains to discuss and refute these opinions (Tr. 297, 407).

## C. Credibility

I disagree with Plaintiff's argument that the ALJ's credibility analysis was either procedurally or substantively inadequate. Although an ALJ's decision must be based on specific reasons for the findings of credibility, supported by substantial evidence in the record, *see Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002);

*Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); SSR 96-7p, as a rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986).

First, the ALJ noted that despite Plaintiff's allegations of disability due to COPD, he continued to smoke, allowing the ALJ to reasonably find that the failure to quit undermined the application for benefits[9] (Tr. 20) Next, although Plaintiff claims here that he is unable

---

[9] *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988), holds as follows in regard SSA claimants smoking against medical advice: "If the claimant in this case chooses to drive himself to an early grave, that is his privilege-but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride." *See also Galinis v. Commissioner of Social Sec.*, 2008 WL 360656, *8 (W.D.Mich.2008)(Miles, J.) ("[W]here a claimant declines to stop smoking despite being instructed by her care providers otherwise is an appropriate factor to consider when assessing the claimant's credibility.")

.

to perform sedentary work, he admitted that he continued to care for his personal needs, perform housekeeping tasks, and mow the lawn (Tr. 20). Although Plaintiff now asserts that he is immobilized by depression and anxiety, he admitted that he continued to attend his children's games, drive, and shop for groceries (Tr. 473). Given the fact that Plaintiff's activities of daily living stand at odds with his allegations of complete disability, the ALJ was entitled to doubt his allegations of disabling limitation, including the claim that his condition obliged him to recline four times each day.

In closing, the finding that the ALJ's determination should be upheld is not intended to trivialize Plaintiff's legitimate impairments as a result of COPD and a heart condition. However, based on a review of this record as a whole, the ALJ's decision is clearly within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen

R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  March 19, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 19, 2008.

s/Susan Jefferson

Case Manager